IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHUCK PETTI, | ) | CASE NO. 1:18CV615 |
| | ) | (Consolidated Case) |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| CAMERON DALEY FRAKER, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |

| | | |
|---|---|---|
| PAUL SPIVAK, | ) | CASE NO. 1:19CV87 |
| | ) | (Consolidated Case) |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| CAMERON D. FRAKER, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |

| | | |
|---|---|---|
| INTELLITRONIX CORPORATION, | ) | CASE NO. 1:19CV966 |
| | ) | (Consolidated Case) |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| CAMERON DALEY FRAKER, | ) | |
| | ) | |
| Defendant. | ) | **ORDER** |

1

## I.

The internet provides a stage for all of humanity so long as you have access to the web, the time to type, and the motivation to press the "send" button.  Just because you take the stage, though, doesn't mean you have an audience.  And even if you do take the stage, no one has to pay attention.  If someone is listening—after all the world can provide a really big audience—no one has to believe you.  The conduct that gives rise to these three consolidated lawsuits occurred in this peculiar digital space.

The law has adjusted to this space over the past quarter century or so.[1]  To some, the internet now stands shoulder to shoulder with Johannes Gutenberg's printing press in terms of global impact.[2]  That might be, but Gutenberg's invention almost six centuries ago[3] continues to remind us that it's the printed word that counts.  That's why the law requires us to start with a contract's written terms before anything else.

Only a handful of years before the internet appeared on the scene, the Supreme Court decided that federal law governs a district court's decision to enforce the parties' forum-selection clause in diversity cases like this one.[4]  A unanimous Court strengthened this principle at the end of 2013, holding that a district court should give controlling weight

---

[1]   *See*   https://thenextweb.com/insider/2011/08/06/20-years-ago-today-the-world-wide-web-opened-to-the-public/, last accessed on 7/12/20.

[2]   *See*, *e.g.*,   https://www.theatlantic.com/magazine/archive/2020/01/before-zuckerberg-gutenberg/603034/, last accessed on 7/12/20;  https://www.newsweek.com/internet-and-gutenberg-158401, last accessed on 7/12/20.

[3]  *See* https://www.studymode.com/essays/The-Printing-Press-96190.html, last accessed on 7/12/20.

[4]  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).

to a valid forum-selection clause in all but the most exceptional cases.[5]

The parties to this lawsuit made clear when their respective businesses brought them together how and where they would resolve disputes like the ones before me. They agreed that their contracts shall be governed by and construed under the laws of the United States and Wyoming, and that any disputes arising in connection with those contracts shall be vested in the state and federal courts in Wyoming. Because their consolidated lawsuits are not exceptional for any reason and because no one has ever contested the validity of the parties' forum-selection clause, the law requires me to give controlling weight to their choice of forum.

Accordingly, for the reasons set forth more fully below, I grant Cameron Daly Fraker's motion to dismiss US Lighting Group, Inc.'s amended complaint.[6] The appropriate remedy the law mandates for this motion, though, is not dismissal of USLG's amended complaint but rather transfer to the United States District Court for the District of Wyoming. Because this Court has already found that all other claims in this consolidated litigation involve the same subject matter and arise out of the same occurrence, I transfer the three cases of this consolidated litigation to the District of Wyoming.

## II.

***How this legal battle began.*** This litigation started out as three separate lawsuits.

---

[5] *Atlantic Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (citing and quoting *Stewart Organization, Inc.*, 487 U.S. at 33 (Kennedy, J. concurring)).

[6] ECF #74. Unless otherwise noted, ECF document references are to Case No. 1:18CV615, the first of the three consolidated cases.

The District Court consolidated them, and the parties then consented to my jurisdiction.[7]

My order of January 24, 2020 summarized how this litigation began,[8] but some of this

history bears repeating.

　　*Petti v. Fraker, Case. No. 1:18CV615,* began in this Court on March 16, 2018 when

Chuck Petti filed a pro se complaint against Fraker.[9]  Petti, an Ohio resident, identifies

himself as the director of sales for a company called US Lighting Group, Inc. and its "co-

subsidiary" Intellitronix Corporation.[10]  Fraker is a Missouri resident who was a distributor

of USLG's solid state LED lights used in commercial and industrial applications.[11]  Petti

claims I have federal question subject matter jurisdiction under 28 U.S.C. § 1331, and seeks

declaratory relief under 28 U.S.C. § 2201.[12]  Nevertheless, he asserts state law claims for

slander per se, the intentional infliction of emotional distress, and punitive damages.  All

three counts arise out of a 174-word online post Fraker allegedly made in mid-January

2018 on a website called Ripoff Report.[13]  The online post complains about USLG product

quality problems, delivery problems, and warranty problems.[14]

　　*Spivak v. Fraker, Case No. 1:19CV87,* started roughly one year after the online post

when Paul Spivak pro se also sued Fraker.[15]  Spivak founded USLG, incorporated it in

---

[7] Non-document entries of 4/24/19 and 4/29/19 (Case No. 1:18CV615); ECF #25 (Case No. 1:19CV87); ECF #10 (Case No. 1:19CV966).
[8] ECF #67.
[9] ECF #1.
[10] *Id.* at 2.
[11] *Id.*
[12] *Id.* at 1.
[13] https://www.ripoffreport.com
[14] ECF #4-1 (Case No. 1:19CV87).
[15] ECF #1, at 2 (Case No. 1:19CV87).

Wyoming, and serves as its chief executive officer.[16]  Like Petti, Spivak claims the online

post defamed him and injured his business.  Unlike Petti, Spivak bases my subject matter

jurisdiction on diversity of citizenship, even though he cites the statute for federal question

subject matter jurisdiction.[17]  Spivak eventually engaged counsel to represent him, and a

second amended complaint is now the basis of his suit.[18]  The second amended complaint

contains no jurisdictional statement.  It also does not enumerate any specific causes of

actions,        though        it        alleges        defamation        and        a        violation        of

Ohio Rev. Code Ann. § 4165.02(A)(10) (West) of Ohio's Deceptive Trade Practices

Act.[19]  Spivak seeks compensatory and punitive damages and declaratory and injunctive

relief.

   *Intellitronix Corp. v. Fraker, Case No. 1:19CV966,* started on May 7, 2018 when

one of the companies I mentioned earlier, Intellitronix, sued Fraker in the Court of

Common   Pleas   in   Lake   County,   Ohio   for   defamation   and   a   violation   of

Ohio Rev. Code Ann. § 4165.02(A)(10) based on the same online post.[20]  Spivak founded

Intellitronix as an Ohio corporation, but today it is a wholly-owned subsidiary of USLG.

He continues to serve as majority owner and CEO of Intellitronix—the same roles he has

at USLG.[21]  Intellitronix's lawyer is the same person who came to represent Spivak.  Not

surprisingly then, Intellitronix's third amended complaint, which now forms the basis of

---

[16] *Id.*; ECF #82-1, at 2 (Case No. 1:19CV87).
[17] ECF #1, at 2 (Case No. 1:19CV87).
[18] ECF #23 (Case No. 1:19CV87).
[19] *Id.* at 1.
[20] *Intellitronix Corp. v. Fraker*, Case No. 18CV000718 (Lake Cty. CP).
[21] ECF #82-1, at 2 and ECF #82-5, at 1 (Case No. 1:19CV87).

this third lawsuit, is identical to Spivak's second amended complaint in all material aspects except, of course, for the different plaintiff name.[22]

*How one more plaintiff was added.*  On January 24, 2020, I granted the motion of USLG to intervene as a plaintiff in these consolidated lawsuits.[23]  USLG and Fraker appear to be the real parties in interest in both the dispute over the distributorship agreements and the defamation claims.[24]  I wrote in my order:

> USLG contends that Petti's and Spivak's defamation claims are really about a dispute over exclusive distributor agreements USLG and Fraker signed in October 2015 and May 2016.[25]  Since an alleged breach of the first of those agreements is the subject of Fraker's counterclaims in these consolidated lawsuits, USLG argues it has a right to intervene under Rule 24.  The lawyer who represents USLG on its motion to intervene also represents Intellitronix and Spivak. USLG apparently intends to expand this legal battle still further by adding a third agreement to the mix—a confidentiality agreement.[26] Like the exclusive distributor agreements, this one is also between USLG and Fraker.[27]

Three days later, USLG filed an amended complaint.[28]  While similar to the amended complaints filed by Spivak and Intellitronix, as the same lawyer authored all three, USLG's amended complaint contains some differences.  In it, USLG claims I have subject matter jurisdiction under diversity of citizenship pursuant to 28 U.S.C. § 1332.[29]

---

[22] ECF #1-1 (Case No. 1:19CV966).
[23] ECF #67.
[24] *Id.* at 8.
[25] ECF #22-1, at 1 (Case No. 1:18CV615); ECF #22-2, at Exhs. 2 and 3 (Case No. 1:18CV615); ECF #34-1, at 1 (Case No. 1:19CV87); ECF #34-2, at Exhs. 2 and 3 (Case No. 1:19CV87).
[26] ECF #22-2, Exh. 1 (Case No. 1:18CV615); ECF #34-2, Exh. 1 (Case No. 1:19CV87).
[27] ECF #67, at 3-4.
[28] ECF #69.
[29] *Id.* at 2.

USLG asserts six causes of action: breach of contract; tortious interference with current and prospective business relations, advantage and contract; misappropriation of trade secrets; libel; deceptive trade practices in violation of Ohio Rev. Code Ann. § 4165.02(A)(10); and injurious falsehood. USLG asks for compensatory and punitive damages along with injunctive relief.[30]  USLG's causes of action are in connection with the online post as well as two distributorship agreements USLG entered into with Fraker.[31]  Unlike the other lawsuits, USLG's amended complaint also alleges breach of a nondisclosure confidentiality agreement USLG and Fraker signed a month before the parties entered into their distributorship arrangement.[32]

**_Pending dispositive motions._**   All of the parties except Petti, who remains unrepresented and unreachable by the Court, have dispositive motions pending.  These include motions for summary judgment for and against the plaintiffs' underlying claims, motions for summary judgment for and against counterclaims, and Fraker's motion to dismiss USLG's amended complaint.[33]  In addition, Spivak and Intellitronix filed a joint motion to strike references in Fraker's summary judgment motions to other lawsuits in which Spivak or USLG was allegedly a party and to strike a declaration from another

---

[30] _Id._ at 10.

[31] ECF #69-2, 69-3, 69-4.

[32] ECF #69-1.

[33] By Spivak for summary judgment on his claims against Fraker and on Fraker's counterclaims against him (ECF #82, Case No. 1:19CV87); by Intellitronix for partial summary judgment on its claims against Fraker (ECF #27, Case No. 1:19CV966); by Fraker for summary judgment on Spivak's claims against him (ECF #67, Case No. 1:19CV87); by Fraker for summary judgment on his counterclaims against Spivak (ECF #72, Case No. 1:19CV87); and by Fraker for summary judgment on Intellitronix's claims against him (ECF #16, Case No. 1:19CV966).

former USLG distributor.[34]  Briefing on these motions is complete.

## III.

Before I untangle this knot, we need to sort out some legal concepts.  Personal jurisdiction is distinct from subject matter jurisdiction, and both are distinct from venue. Subject matter jurisdiction, personal jurisdiction, and venue can be found in more than one court, too.  A choice-of-law clause is distinct from a forum-selection clause in a contract, and these two concepts are distinct from the other three concepts I just mentioned.  In addition, a choice-of-law clause can specify laws from a jurisdiction different from the location the parties identify in their forum-selection clause.  The law applicable here mandates but one outcome when we manage to keep these concepts straight.

***Fraker's Motion to Dismiss.***  I first take up Fraker's motion to dismiss USLG's amended complaint, which is the most recently filed dispositive motion.  Fraker argues that USLG's amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) (lack of personal jurisdiction), (b)(3) (improper venue), and (b)(6) (failure to state a claim upon which relief can be granted).[35]

On the first ground, he argues he is not subject to Ohio's long arm statute, and to exercise jurisdiction over him would violate due process.  On the second ground, he points to the forum-selection clause in the two distributorship agreements he signed with USLG. In that clause, the parties chose the state and federal courts in Wyoming to hear their

---

[34] ECF #75.
[35] ECF #74, at 1-2.

disputes.  On the third ground, he argues that USLG filed three of the causes of action in the amended complaint beyond a one-year statute of limitation; and for one of those counts USLG failed to plead special damages.  USLG opposes the motion to dismiss on all three grounds.[36]  Fraker filed a reply brief to respond to USLG's arguments.[37]

Fraker's second ground is the focus of my analysis.  Although his motion seeks dismissal of USLG's amended complaint, Fraker acknowledges that either dismissal or transfer to the selected forum is the appropriate remedy when a forum-selection clause is in play.[38]  "Congress has replaced the traditional remedy of outright dismissal with transfer."[39]  The law must govern the remedy as opposed to the way Fraker drafted his request for relief.

*The Forum-Selection Clause.*  I begin where the law requires me to begin, namely, with the forum-selection clause itself.  The clause is found in the two distributorship agreements USLG attaches to its amended complaint.  They both read as follows:

> GOVERNING LAW AND CHOICE OF FORUM:  This Agreement shall be governed by and construed under the laws of the United States of America and the State of Wyoming, without giving effect to any choice or conflict of law provision or rule (whether of the State of Wyoming or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Wyoming. Jurisdiction for resolution of any disputes arising in connection with this Agreement shall be vested in the state and federal courts located

---

[36] ECF #88.

[37] ECF #89 and #89-1.

[38] ECF #74-1, at 7 (quoting and citing *ThorWorks Indus. v. E.I. DuPont De Nemours & Co.*, 606 F. Supp. 2d 691, 694 (N.D. Ohio 2008), and *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998)).

[39] *Atlantic Marine Const. Co.*, 571 U.S. at 60 (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007), and notes following 28 U.S.C. § 1404(a)).

in the state of Wyoming.[40]

Federal law governs the enforcement of the forum-selection clause. "[A] district court sitting in diversity must apply a federal statute that controls the issue before the court and that represents a valid exercise of Congress' constitutional powers."[41]  In this instance, that statute is 28 U.S.C. § 1404(a). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' "[42]  Section 1404(a), therefore, provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district.[43]  Unlike § 1406 or Fed. R. Civ. P. 12(b)(3), this provision is not conditioned on venue being "wrong" or "improper" in the initial forum.[44]  Plaintiffs satisfy the federal venue laws of 28 U.S.C. § 1391 if for no other reason than they agreed to bring their disputes to courts in Wyoming. No question then that venue and jurisdiction are proper there.[45]  Dismissal of the case as Fraker requests is therefore an impermissible remedy when the analysis focuses on the forum-selection clause, which Fraker seeks to enforce.[46]

But the analysis must continue because the parties agreed to a forum-selection

---

[40] ECF #69-2, at 3; ECF #69-3, at 3.

[41] *Stewart Organization, Inc.*, 487 U.S. at 27.  *See also Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 568 (6th Cir. 2019) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)).

[42] *Stewart Organization, Inc.*, 487 U.S. at 29 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

[43] *Atlantic Marine Const. Co.*, 571 U.S. at 59.

[44] *Id.* at 55, 59.

[45] *Preferred Capital, Inc. v. Assocs. in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) ("the use of a forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court").

[46] *Atlantic Marine Const. Co.*, 571 U.S. at 56.

clause.

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." *Stewart*, 487 U.S., at 31 . . . . The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id*., at 33 . . . (KENNEDY, J., concurring).   For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id*., at 33 . . . (same).[47]

This instruction is crystal clear.  "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.  Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."[48]  Forum-selection clauses carry "controlling weight" in all but "the most exceptional cases."[49]  Courts should not "unnecessarily disrupt" parties' expectations when they have already agreed where to litigate.[50]  In Ohio, as elsewhere, a forum-selection clause can affect where personal jurisdiction, venue, or both lie.[51]

**How Recent Law Changes the Analysis.**  Just last year, the Sixth Circuit explained how *Atlantic Marine* changed the legal analysis when the parties have agreed to a forum-

---

[47] *Id.* at 63.

[48] *Id.* at 62.

[49] *Id.* at 60.

[50] *Id.* at 66.

[51] *See, e.g., ECHO Health, Inc. v. NexPay, Inc.*, No. 1:13-CV-1563, 2013 WL 5952182 (N.D. Ohio Nov. 6, 2013) (finding that consent venue in Ohio via a forum-selection clause amounts to consent to personal jurisdiction in Ohio).

selection clause.

> *Atlantic Marine* clarified the analysis that applies when a court considers whether it should grant a motion to dismiss for forum non conveniens or transfer under § 1404(a) pursuant to an enforceable forum-selection clause. 571 U.S. at 62–65. . . . A typical forum non conveniens analysis involves three steps. *Hefferan* [*v. Ethicon Endo-Surgery Inc.*], 828 F.3d [488,] . . . 492 [(6th Cir. 2016)]. First, the court determines the degree of deference owed the plaintiff's forum choice. The defendant must then establish an "adequate alternative forum" and show that "the plaintiff's chosen forum is unnecessarily burdensome based on public and private interests." *Ibid.* In *Atlantic Marine*, the Supreme Court concluded that an enforceable forum-selection clause alters this analysis in three important ways. 571 U.S. at 63. . . . First, the plaintiff's choice of forum no longer receives any weight. Instead, the plaintiff must show why the court should not transfer the case to the selected forum. *Ibid.* Second, the court should only consider arguments about public-interest factors, and not the parties' private interests. *Id.* at 64 . . . . Public-interest factors, the Court observed, will "rarely defeat a transfer motion," and thus the "practical result" is that forum-selection clauses will almost always control. *Ibid.* Third, when a party bound by a forum-selection clause files suit in a different forum, the transfer of venue will not carry the original venue's choice-of-law rules. *Ibid.*[52]

These clear explanations of the law must govern my decision on Fraker's motion despite the fact that Fraker asked for the wrong relief—dismissal instead of transfer—though he acknowledged that either/or is an option left to my discretion. This analysis, of course, has one prerequisite: a contractually valid forum-selection clause.[53]

> To evaluate whether a forum-selection clause is enforceable, a court must consider: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. . . ." The

---

[52] *Boling*, 771 F. App'x at 568 (footnote omitted).

[53] *Atlantic Marine Const. Co.*, 571 U.S. at 62 n.5 ("[o]ur analysis presupposes a contractually valid forum-selection clause").

party who opposes the enforcement of the forum-selection clause has the burden of showing that the clause should not be enforced.[54]

No litigant in these consolidated lawsuits has ever challenged the validity of the the forum-selection clauses.  No litigant has ever suggested that the forum-selection clause was the result of fraud, duress, or the like.  No litigant has ever challenged the ability of the Wyoming courts to handle these disputes fairly and effectively.

None of this comes as a surprise.  After all, the clause at issue in the distributorship agreements is a forum-selection clause combined with a choice-of-law clause.  The parties agreed that their agreement "shall be governed by and construed under the laws of the United States of America and the State of Wyoming, without giving effect to any choice or conflict of law provision or rule (whether of the State of Wyoming or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Wyoming."  That the United States District Court for the District of Wyoming is in fact the best equipped forum to deal with these disputes cannot be gainsaid.  Moreover, the forum-selection clause is unambiguous,[55] mandatory in nature,[56] and as broad in its

---

[54] *Boling*, 771 F. App'x at 568 (quoting *Wong*, 589 F.3d at 828).

[55] *See*, *e.g.*, *Villanueva v. Barcroft*, 822 F. Supp. 2d 726, 733–34 (N.D. Ohio 2011) (finding a combined choice-of-law and forum-selection clause to be unambiguous, and holding that if a contract is clear and unambiguous, there is no issue of fact to be determined) (citing *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (quoting *Lincoln Elec. Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 684 (6th Cir. 2000))).

[56] *Compare Boling v. Prospect Funding Holdings, LLC*, No. 114CV00081GNSHBB, 2015 WL 5680418, at *6 (W.D. Ky. Sept. 25, 2015), *aff'd*, 771 F. App'x 562 (6th Cir. 2019) (forum-selection clause giving parties a choice of fora) with *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766, 771 (S.D. Tex. 2014), *aff'd*, 648 F. App'x 398 (5th Cir. 2016) (forum-selection clause mandating Germany as the proper forum).

coverage as it possibly could be.[57]

The third factor dovetails into the first consideration under the *Atlantic Marine* analysis.  "[T]he plaintiff's choice of forum merits no weight.  Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted."[58]  USLG contends that it, "as a result of Defendant's participation in this case, would face great injustice in now having to litigate its claims against Defendant in Wyoming, while allowing Defendant to continue to litigate his claims under the same agreement against Spivak in this Court.  Defendant's counterclaims compelled USLG to intervene in the action to protect its own interests as a real party in interest."[59]  USLG also contends that a transfer to the District of Wyoming would force it "to essentially restart this litigation, arising from the same events as every other claim before this Court."[60]

These concerns over injustice and inconvenience would be easily remedied were I to transfer the consolidated litigation in its entirety.  Moreover, USLG's concerns cross the line into the exact consideration of private interests that *Atlantic Marine* prohibits in this context.  "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.  A court accordingly must deem the private-interest

---

[57] *See Villanueva*, 822 F. Supp. 2d at 737.
[58] *Atlantic Marine Const. Co.*, 571 U.S. at 63.
[59] ECF #88, at 8.
[60] *Id.*

factors to weigh entirely in favor of the preselected forum."[61]

USLG fares no better if I assess its concerns as public interests. "[A] district court may consider arguments about public-interest factors only. . . . Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[62]  *Atlantic Marine* gives ample guidance on this point. "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.' . . . The Court must also give some weight to the plaintiffs' choice of forum."[63]  The Sixth Circuit has also enumerated public-interest factors.[64]

Any administrative difficulties flowing from court congestion favor transfer to Wyoming. The unweighted and weighted civil case filings per authorized judgeship during the 12-month period ending September 30, 2019 is 307 and 298 in the Northern District of Ohio, and 88 and 85 in the District of Wyoming.[65]  The number of civil cases filed by

---

[61] *Atlantic Marine Const. Co.*, 571 U.S. at 64.

[62] *Id.*

[63] *Id.* at 63 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (internal quotations omitted), and citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

[64] *Boling*, 771 F. App'x at 568 n.6 (quoting *Piper Aircraft Co.*, 454 U.S. at 241 n.6 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947))) ("Public interest factors include 'the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.' ").

[65] *See* https://www.uscourts.gov/sites/default/files/data_tables/jb_x1a_0930.2019.pdf, last accessed on 8/10/20.

district during the 12-month period ending September 30, 2019 is 4,164 in the Northern District of Ohio and 273 in the District of Wyoming.[66]  With 13 Article III judges in the Northern District of Ohio, this civil case number translates into roughly 320 cases per judge.  With three Article III judges in the District of Wyoming, this civil case number translates into 91 cases per judge.

As I noted above, there is no better forum than a court in Wyoming to apply Wyoming law—as the parties have chosen.  Wyoming also has a strong interest in seeing that its laws are correctly applied to entities like USLG that are incorporated under its laws.

Another public interest concern is worth noting.  Some of the causes of action and remedies the parties plead in the consolidated lawsuits are available exclusively under Ohio law.  Yet the parties agreed to have their distributorship agreements governed by Wyoming law.  The forum-selection clause and choice-of-law clause were presumably part of the bargaining done in exchange for other binding promises.[67]  The enforcement of these clauses protects the parties' "legitimate expectations and furthers vital interests of the justice system."[68]  Stated in less lofty prose, enforcing what the parties agreed to discourages gamesmanship and any temptation to go forum shopping for the best remedies possible.  Fraker previously raised this concern,[69] but I raise it as applying to all parties.

The third consideration in the *Atlantic Marine* analysis—when a party bound by a

---

[66] *See* https://www.uscourts.gov/sites/default/files/data_tables/jff_4.2_0930.2019.pdf, last accessed on 8/10/20.

[67] *Atlantic Marine Const. Co.*, 571 U.S. at 63.

[68] *Stewart Organization, Inc.*, 487 U.S. at 33 (Kennedy, J., concurring).  *See also Atlantic Marine Const. Co.*, *id.*

[69] ECF #39-1 at 3 n.2 (Case No. 1:19CV87).

forum-selection clause files suit in a different forum, the transfer of venue will not carry the original venue's choice-of-law rules—bears little more than a brief mention.  The parties selected Wyoming law to govern their agreements, not Ohio's choice-of-law rules or any other laws of our state for that matter.

USLG makes a final pitch for keeping the case with me by arguing that Fraker waived his right to object to venue "through his extensive participation in litigation in this forum."[70]  USLG's waiver arguments are unpersuasive.  USLG became a party to this litigation on January 24, 2020 when I granted its motion to intervene.[71]  The next seven docket entries relate to the filing and service of USLG's amended complaint or efforts to mail my order to Petti, who remains unrepresented.  The next docket entry is Fraker's motion to dismiss the amended complaint, which he filed only 17 days after my order and only 14 days after USLG had filed its amended complaint.  Except for his opposition to USLG's motion to intervene, Fraker has not participated in any litigation against USLG.  USLG's admission that it had been participating in the litigation "through Spivak"[72] doesn't help USLG's cause, unless USLG wishes to concede that for legal purposes Spivak and USLG are one and the same entity—an admission neither has made.

In all of this, USLG never mentions *Atlantic Marine*, even though the Sixth Circuit has acknowledged that that case changes the legal analysis when a forum-selection clause is involved.  (USLG was aware of this controlling authority, since it previously cited

---

[70] ECF #88, at 2.
[71] ECF #67.
[72] ECF #88, at 4.

*Atlantic Marine* in its reply brief in support of its earlier motion to intervene.[73])   All but two of the cases it cites in support of its position on waiver pre-date *Atlantic Marine*.   Of the two cases that came after, one is inapposite, not from this jurisdiction, and never engages in any of the analysis under *Atlantic Marine*.[74]   The other case finds no waiver, and is also not from this jurisdiction.[75]   More importantly, its analysis undermines USLG's opposition to Fraker's motion to dismiss.

USLG argues that Fraker has "consented to personal jurisdiction and venue, and has made the enforcement of the forum selection clause unreasonable for USLG."[76]   Yet the case it cites in support explains that the focus on unreasonableness has been superseded by the legal analysis in *Atlantic Marine*.   The United States District Court for the Southern District of Texas in *Wellogix, Inc. v. SAP America, Inc.*, which USLG cites, explains:

> Under the [*M/S] Bremen* [*v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907 (1972)] standard, forum-selection clauses are prima facie valid and will be enforced unless the resisting party proves that enforcement is unreasonable.   *Id.* at 1913.   A resisting party can show unreasonableness by establishing a number of relevant factors, [sic] However, that party bears a "heavy burden of proof."   *Bremen*, 92 S.Ct. at 1917.
>
> After *Atlantic Marine,* forum-selection clauses must be "given controlling weight in all but the most exceptional cases," [*Atlantic Marine Const. Co.*, 571 U.S. 49,] 134 S. Ct. [568,] … 579 (internal quotation marks and citation omitted), because in "all but the most unusual cases ... the 'interest of justice' is served by holding parties to their bargain," *id.* at 583.[77]

---

[73] ECF #41, at 2 (Case No. 1:19CV87).

[74] *Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416 (5th Cir. 2014) (addressing a party's waiver of a right to arbitrate a dispute).

[75] *Wellogix, Inc. v. SAP Am., Inc.*, 58 F. Supp. 3d 766 (S.D. Tex. 2014), *aff'd*, 648 F. App'x 398 (5th Cir. 2016).

[76] ECF #88, at 8.

[77] *Wellogix, Inc.*, 58 F. Supp. 3d at 779–80 (footnotes omitted).

USLG mentions nothing of this change in the legal analysis.  But even if I were to overlook this bum steer, nothing Fraker has done in opposing USLG suggests that he intentionally relinquished his rights under the forum-selection clause, substantially invoked the judicial process to USLG's detriment or prejudice, or otherwise acted so inconsistently as to induce a reasonable belief that he relinquished those rights.[78]  Furthermore, while I am of course not bound by a case from a federal court in Texas, our Circuit has also held that *Atlantic Marine* "alters this analysis."[79]  The legal consequence is that, with an enforceable forum-selection clause in play, in all but the most exceptional cases, the interests of justice are served by holding parties to their bargain.[80]  Litigants may want to overlook this law, but I can't.

USLG nevertheless persists.  "When parties substantially participate in litigation in a venue, including filing claims and dispositive motions like in this case, courts generally find waiver has occurred."[81]  One of the cases USLG cites in support of this proposition comes from this Court—another pre-*Atlantic Marine* case.[82]  Waiver there was based on the defendant's "repeated consent to the jurisdiction of this Court.  [Defendant] has repeatedly consented to litigation in the Northern District of Ohio under the 1982 contract containing the New York forum selection clause.  Most importantly, the 2002 litigation

---

[78] *Id.* at 776.
[79] *Boling*, 771 F. App'x at 568.
[80] *Id.*
[81] ECF #88, at 6.
[82] *Estate of Popovich v. Sony Music Entm't*, No. 1:11 CV 2052, 2012 WL 892531 (N.D. Ohio Mar. 14, 2012).

stemmed from the 1982 contract, also at issue in this case and involved the same parties and many of the same factual issues that are the subject matter of this action."[83]  A decade of litigation among the parties there in both state and federal courts in Ohio, including trying one case in our District to a jury verdict and then challenging the verdict through appeal in the Sixth Circuit, is considerably longer than the several weeks Fraker has been litigating its motion to dismiss USLG's amended complaint.

USLG has taken full advantage of its opportunity to be heard on Fraker's motion, but its persistence does not equal persuasion.  Even under a traditional forum non conveniens analysis,[84] Wyoming courts undeniably provide an alternative forum that is both available and adequate—indeed preferable to Ohio given the parties' agreement on both the choice of law and the choice of forum.  And the public interests weigh in favor of a transfer to Wyoming to boot.

The contract language the parties used to reflect their choices clearly encompasses the claims USLG asserts against Fraker.[85]  The parties' disputes arise in connection with the distributorship agreements, as the forum-selection clause requires.[86]  USLG's addition of claims related to alleged breaches of its non-disclosure agreement with Fraker, which is governed by Ohio law,[87] doesn't change that conclusion.  The non-disclosure agreement contains only a choice-of-law clause, is expressly incorporated into the distributorship

---

[83] *Estate of Popovich*, 2012 WL 892531, at *3.
[84] *See, e.g.*, *Piper Aircraft Co.*, 454 U.S. at 254 n.22; *Wong*, 589 F.3d at 830; *Betco Corp., Ltd. v.Peacock*, No. 3:12-CV-1045, 2014 WL 809211, at *9 (N.D. Ohio Feb. 28, 2014).
[85] ECF #69.
[86] ECF #69-2, at 3; #69-3, at 3.
[87] ECF #69-1, at 2.

agreements that select Wyoming law and Wyoming courts for settling disputes,[88] and is part and parcel of the parties' dispute over their business relationship.[89]  Simply put, it would be impossible to breach the non-disclosure agreement and not breach the clause entitled "OBLIGATIONS OF DISTRIBUTOR" in the distributorship agreements.[90]

One last question remains under *Atlantic Marine*: whether this is one of those "exceptional cases"[91] or "unusual cases"[92] where I can set aside the parties' forum-selection clause.  It is not.  As I stated earlier, there is nothing unusual about this case.  It does not, for example, present a forum-selection clause from a company's website that conflicted with the order confirmations and invoices, thereby creating ambiguity in the governing terms.[93]  It does not present a situation where the parties are contesting the

---

[88] ECF #69-2, at 3; #69-3, at 3.

[89] *See Beverage Holdings LLC v. 5701 Lombardo LLC*, 2019-Ohio-4716, 2019 WL 6120064, at *3 ("[w]e seek primarily to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract") (citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St. 3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11); *G.G. Marck & Assocs., Inc. v. Peng*, 762 F. App'x 303, 310 (6th Cir. 2019) (under Ohio law, holding that a fully integrated agreement cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing) (citing *Bellman v. Am. Internatl. Grp.*, 2007-Ohio-2071, 113 Ohio St. 3d 323, 865 N.E.2d 853); *Carlson v. Flocchini Investments*, 2005 WY 19, 106 P.3d 847, 854 (Wyo. 2005) (under Wyoming law, "the words used in the contract are afforded the plain meaning that a reasonable person would give to them"); *Wadi Petroleum, Inc. v. Ultra Res., Inc.*, 2003 WY 41, 65 P.3d 703, 708 (Wyo. 2003) (same).

[90] ECF #69-2, at 3; #69-3, at 3.  *See Beverage Holdings, id.  See also Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 529 (Wyo. 1999) (under Wyoming law, where a forum selection clause is sufficiently broad, that clause is not constrained to those claims directly based on the contract).

[91] *Stewart Organization, Inc.*, 487 U.S. at 33.

[92] *Atlantic Marine Const. Co.*, 571 U.S. at 64.

[93] *Sprout Healthy Vending LLC v. Seaga Mfg. Inc.*, No. SACV1401613JVSJCGX, 2014 WL 12688422 (C.D. Cal. Dec. 18, 2014).

validity of the forum-selection clause itself.[94]

Fraker may have consented to my jurisdiction by bringing counterclaims against Spivak,[95] but that doesn't mean I can ignore the forum-selection clause or the clear mandate from the Supreme Court and this Circuit. The same holds true with a finding that venue is proper here. Jurisdiction and venue, though separate concepts, can be proper in more than one location.

Fraker and USLG are the signatories to the agreements at issue. The forum-selection clause encompasses the disputes they now litigate. They picked only one forum for resolving their disputes. For these reasons, I grant Fraker's motion. Instead of dismissing USLG's amended complaint, however, I transfer the portion of the lawsuit involving USLG's amended complaint against Fraker to the United States District Court for the District of Wyoming.

## IV.

I must now deal with the rest of these consolidated lawsuits. The parties themselves, the nature of their pending claims, and prior rulings make untangling this particular knot much easier.

*Some Undisputed Basics about the Consolidated Lawsuits.* Two facts are self-evident about the pending claims. First, in 2015, the parties began a business relationship

---

[94] *Howmedica Osteonics Corp. v. Sarkisian*, No. CIV.A. 14-3449 CCC, 2015 WL 1780941 (D.N.J. Apr. 20, 2015), *aff'd,* No. CV 14-3449 (CCC), 2016 WL 8677214 (D.N.J. Aug. 26, 2016), *mandamus granted, order vacated sub nom. In re: Howmedica Osteonics Corp*, 867 F.3d 390 (3d Cir. 2017).
[95] ECF #26 (Case No. 1:19CV87).

that enabled Fraker to distribute USLG's solid state LED lights first in five cities across Missouri, Iowa, and Nebraska[96] and then in the entire states of Missouri, Iowa, Nebraska, and Kansas.[97]   Second, that business relationship soured leading to these lawsuits starting in 2018.

In opposing Fraker's motion to dismiss, USLG described the litigation this way: "This case arises from a defamatory post that Defendant Cameron Daley Fraker ("Defendant") published on the website RipoffReport.com ("Report") because of a business dispute between USLG and Defendant."[98]   Another description by USLG of the litigation: "Plaintiff Paul Spivak ("Plaintiff") and Plaintiff Chuck Petti's libel claims against Cameron D. Fraker ("Defendant") arise out of an underlying contractual dispute between Defendant and U.S. Lighting Group, Inc., ("USLG").  Defendant has also asserted Counterclaims against Plaintiff based on this same contract dispute."[99]

No one opposed the decision to consolidate the *Petti* and *Spivak* lawsuits.  Fraker removed the *Intellitronix* lawsuit from state court—a move Intellitronix, the plaintiff in that lawsuit, opposed through a motion to remand.[100]   Intellitronix, however, consented to my jurisdiction and agreed not to oppose Fraker's motion to consolidate all three lawsuits[101] in the event the Court denied its motion to remand.[102]   That's what happened.

---

[96] ECF #69-2, at 1, 6.
[97] ECF #69-3, at 1.
[98] ECF #88, at 2.
[99] ECF #22-1, at 1.
[100] ECF #5 (Case No. 1:19CV966).
[101] ECF #4 (Case No. 1:19CV966).
[102] ECF #8 (Case No. 1:19CV966).

In granting Fraker's unopposed motion to consolidate all three lawsuits slightly more than a year ago, the Court found these lawsuits "involve the same subject matter and arise out of the same occurrence."[103]

***Authority to Transfer Sua Sponte.*** I have the authority to transfer the rest of the litigation, and can do so without a motion. "Under our precedent, a district court does not abuse its discretion simply by sua sponte raising forum non conveniens. . . . The doctrine falls within the court's inherent authority. . . . So long as the district court has 'facts relevant to the issue of forum non conveniens,' it can raise the doctrine on its own accord."[104] This inherent authority derives from the very nature of a court and the institutional role it fulfills, and has deep roots in long-standing precedents.[105] The case filings present more than ample facts for addressing the issue of forum non conveniens, as indicated in my lengthy analysis of Fraker's motion to dismiss USLG's amended complaint.

Despite some procedural gymnastics, these consolidated cases are still at the motion stage. USLG until recently was not even a party, though it appears to be one of the real parties in interest.[106] I have found no applicable case law identifying a particular time or

---

[103] ECF #9, at 7 (Case No. 1:19CV966).

[104] *Wong*, 589 F.3d at 830 (citing and quoting *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 364–65 (6th Cir. 2008) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991))).

[105] *See*, *e.g.*, *United States v. Hudson*, 11 U.S. 32, 34 (1812) ("[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution"); *Chambers*, 501 U.S. at 44 (holding that "other facets to a federal court's inherent power" include dismissing a case on grounds of forum non conveniens or failure to prosecute).

[106] ECF #67, at 8.

event in a case after which it is too late to transfer it by honoring a forum-selection clause. Of all the public and private factors a court can consider, stage of the litigation has never surfaced as one of them.[107]  In fact, judges can even transfer cases at the appellate stage of litigation.[108]

**Transfer as It Relates to the Claims.**  Transfer of the rest of the consolidated lawsuits to Wyoming makes sense if the remaining pending claims fall under the language of the forum-selection clause found in the distributorship agreements.  "Jurisdiction for resolution of any disputes arising in connection with this Agreement shall be vested in the state and federal courts located in the state of Wyoming."  As I already noted, it is hard to imagine a more broadly worded clause.[109]

The District Court's order consolidating these lawsuits says as much in its recognition that these consolidated lawsuits "involve the same subject matter and arise out of the same occurrence."[110]  As expected, no one in the end objected to the consolidation.

---

[107] *See, e.g.*, 15 C. WRIGHT & A. MILLER, § 3854 STANDARD IN CONSIDERING TRANSFER —INTEREST OF JUSTICE, 15 FED. PRAC. & PROC. JURIS. § 3854 (4th ed.).

[108]  14D C. WRIGHT & A. MILLER, § 3827 TRANSFER TO PROPER VENUE OR DISMISSAL UNDER 28 U.S.C.A. § 1406(A), 14D FED. PRAC. & PROC. JURIS. § 3827 (4th ed.).

[109] *See Interamerican Trade Corp. v. Companhia Fabricadora De Pecas*, 973 F.2d 487 (6th Cir. 1992) (a forum-selection clause that refers to disputes "[i]n relation to the interpretation and compliance" with the agreement encompasses claims arising out of alleged breaches, including breach of oral agreement, wrongful repudiation, unjust enrichment, and breach of exclusive sales agreement); *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1140 (6th Cir. 1991) (forum-selection clause language such as "all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract" covers more than pure contract claims).  *See also Villanueva*, 822 F. Supp. 2d at 737 (finding a broadly worded forum-selection clause to encompass all claims that arise out of the agreement at issue, even applicable to non-signatories).

[110] ECF #9, at 7 (Case No. 1:19CV966).

Most of the pending claims allege in some form or fashion a breach of the distributorship agreements.  The forum-selection clause covers these claims.

The online post plaintiffs claim defamed them complained about product quality problems, delivery problems, and warranty problems.[111]  The post itself indicates that it was submitted by a "Midwest Distributor," who then complains from the start in the first person singular about an allegedly unmet order on which he placed a $38,000 down payment.[112]  Later in the post, he reports that USLG has refused to ship replacement light bulbs despite a recall.  "They've done this to every distributor."[113]  A few sentences later, he reports how "from talking to other distributors that I'm not the only one," and how USLG has "accepted hundreds of thousands of dollars from other distributors in the last 18 months in orders and distribution rights."[114]  Whether or not any plaintiff has been defamed is yet to be determined.  Given the online post's contents, though, that determination will require analysis of rights and obligations under the distributorship agreements.  That analysis will in turn make it impossible to disconnect the distributorship agreements from the defamation claims.

USLG's new claim alleging a breach of the non-disclosure agreement is no different.[115]  The non-disclosure agreement, after all, is expressly incorporated into the distributorship agreements[116] and is, therefore, governed by the parties' choice of forum.

---

[111] ECF #69-4.

[112] *Id*. at 2-3.

[113] *Id*. at 3.

[114] *Id.*

[115] ECF #69-1.

[116] ECF #69-2, at 3; #69-3, at 3.

This analysis shows that all the claims in the consolidated lawsuits arise in connection with the distributorship agreements.

***Transfer as It Relates to the Parties.***   Fraker and USLG are signatories to the distributorship agreements that contain the forum-selection clause.   Fraker is the sole defendant in all three lawsuits.   USLG is a plaintiff in the consolidated lawsuits.   Therefore, both are bound by the forum-selection clause.   But should Petti, Spivak, and Intellitronix be bound by the same clause?

The law is clear on this point, especially when applied to some of the undisputed facts.   "A non-signatory to a contract . . . may be bound by a forum selection clause in that contract if the non-signatory is sufficiently 'closely related' to the dispute that it is foreseeable that the party will be bound."[117]   Examples of those who fall into this category include "shareholders, officers, and directors of a corporation" with regard to a corporate contract;[118] "[c]orporations wholly owned and controlled by a signatory to a contract" containing a forum-selection clause;[119] a non-signatory who "is in an agency relationship with one of the parties to the contract" containing a forum-selection clause;[120] a non-

---

[117] *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-CV-2613, 2011 WL 711568, at *8 (N.D. Ohio Feb. 22, 2011) (citing *Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105–06 (6th Cir. 1997)).  *See also Villanueva*, 822 F. Supp. 2d at 737.

[118] *Hitachi Medical Systems America, Inc.*, *id.* (citing *Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 757 (8th Cir. 2001), and *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)).

[119] *Id.* (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209–10 (7th Cir. 1993)).

[120] *Id.* (citing *WashPro Express, L.L.C. v. VERwater Envtl., L.L.C.*, 2007-Ohio-910).

signatory who is "a third-party beneficiary of the contract"[121] that  contains a forum-selection clause; and an assignee to contract that contains a forum-selection clause.[122]  At least one judge from our District has followed a totality-of-the-circumstances approach adopted by the United States District Court for the Middle District of Tennessee.

> "[C]ourts considering this question of whether a non-signatory may be bound by a forum selection clause take a common sense, totality of the circumstances approach that essentially inquires into whether, in light of those circumstances, it is fair and reasonable to bind a nonparty to the forum selection clause.  As noted above, this approach places emphasis on whether it should have been reasonably foreseeable to the non-signatory that situations might arise in which the non-signatory would become involved in the relevant contract dispute."[123]

Spivak as the majority owner and CEO of USLG and Intellitronix fall within one of these categories as does Intellitronix itself as a wholly-owned subsidiary of USLG.  Petti as director of sales for both Intellitronix and USLG would be expected to know the distributorship arrangements inside and out, including the terms by which distributors like Fraker and others sold USLG products.  Petti's title alone designates the person who likely oversees the distributorship network—if not solely, then at least closely in concert with

---

[121] *Id.* (citing *Barrett v. Picker Internatl., Inc.*, 68 Ohio App. 3d 820, 589 N.E.2d 1372, 1375–76 (1990), and *Highway Commercial Servs., Inc. v. Zitis*, No. 2:07-CV-1252, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008)).

[122] *Villanueva*, 822. F. Supp. 2d at 737 (citing *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 WL 908753, at *7–*8 (M.D. Tenn. Mar. 12, 2010)).

[123] *Hitachi Medical Systems America, Inc.*, 2011 WL 711568, at *9 (quoting *Regions Bank*, 2010 WL 908753, at *6).  *See also Venard v. Jackson Hole Paragliding, LLC*, 2013 WY 8, 292 P.3d 165, 172 (Wyo. 2013) (under Wyoming law, non-signatories to an agreement containing a forum selection clause that have been found to be "closely related" to the contracting party have included parent corporations to the contracting party, corporations controlled by the contracting party, agents of the contracting party, and corporations affiliated with the contracting party).

others.   A director of sales would also be expected to have intimate knowledge of disputes—especially those reaching the stage of a federal lawsuit—arising in connection with those arrangements.  It is, therefore, foreseeable that he, too, would be bound by the terms of the distributorship agreements, including the forum-selection clause.

   ***Transfer as It Relates to Judicial Resources and the Risk of Inconsistent Judgments.***   Transfer authority is inherent in my institutional role as a judge.  No one in my position, however, should transfer one case, let alone three consolidated cases, to the docket of another federal district court without considerable pause, reflection, and analysis. A final consideration must be one of judicial economy and avoiding conflicting or inconsistent results across districts.  Our District and our Circuit have been mindful of this consideration in traditional forum non conveniens cases with and without forum-selection clauses.[124]

   The consolidation order in this case stated the obvious and perhaps the most relevant aspect of these consolidated cases: they "involve the same subject matter and arise out of the same occurrence."[125]   These lawsuits rest on a business relationship structured and governed by distributorship agreements.   When that relationship deteriorated, the distributor expressed his frustrations through a keyboard connected to the internet.  The other side of the business relationship took offense, and sued.

---

[124] *See, e.g., Betco Corp., Ltd. v.Peacock*, 2014 WL 809211, at *9, *11 (without a forum-selection clause); *Boling v. Prospect Funding Holdings, LLC*, No. 114CV00081GNSHBB, 2015 WL 5680418, at *6 (W.D. Ky. Sept. 25, 2015), *aff'd,* 771 F. App'x 562 (6th Cir. 2019) (with a forum-selection clause).
[125] ECF #9, at 7 (Case No. 1:19CV966).

The complicated procedural history of these cases has no doubt made this litigation time-consuming and expensive for the parties.  That burden would become intolerable were it possible that all of their time, effort, and other expenditures ended in conflicting or inconsistent results from different jurisdictions.  I more clearly defined to some degree the contours of this litigation by allowing USLG to intervene and by reminding the parties that "this litigation is far less complicated than its long and winding history suggests."[126]  Now that I have decided to transfer USLG's dispute with Fraker to the United States District Court for the District of Wyoming, I dare not run the risk of adding to the complications instead of reducing them.  The United States District Court for the District of Wyoming is well-positioned to handle these consolidated cases.  The transfer of all three cases follows the law, and ensures that the parties' disputes will be resolved at the location and under the laws as they agreed.  My decision to transfer these consolidated cases to Wyoming will in the end best serve judicial economy and ensure a consistent result.

"Keep in mind that the question here is quite narrow.  It's not about the *merits* of the case."[127]  The Sixth Circuit used those words earlier this summer when affirming a district court's decision requiring the parties to resolve their disputes by arbitration as they agreed in their contract.  The same can be said here.  This transfer complies with governing law and fulfills the parties' contractual intentions.  "That's all that happened here."[128]

---

[126] ECF #67, at 9.

[127] *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) (emphasis in original).

[128] *Id.*

**V.**

For the foregoing reasons and for good cause shown, it is hereby

ORDERED that the motion of Fraker to dismiss USLG's amended complaint (**ECF #74**) is hereby granted except that the relief accorded Fraker shall be the transfer of USLG's amended complaint to the United States District Court for the District of Wyoming;

FURTHER ORDERED that all remaining aspects of these three consolidated cases shall be transferred to the United States District Court for the District of Wyoming; and

FURTHER ORDERED that the Clerk of Court shall forthwith transfer Case Nos. 1:18CV615, 1:19CV87, and 1:19CV966 to the United States District Court for the District of Wyoming.

IT IS SO ORDERED.


Dated: August 19, 2020                                    s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge